**COLUMBIA HELICOPTERS, INC., an Oregon Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 76–1007.

United States District Court, D. Oregon.

Feb. 23, 1978.

Jonathan A. Ater, Wesley W. Kirtley, James N. Gardner, Lindsay, Nahstoll, Hart, Neil & Weigler, Portland, Or., for plaintiff.

Sidney I. Lezak, U.S. Atty., Portland, Or., Gerald Kafka, Trial Atty., Tax Division, Department of Justice, Washington, D.C., for defendant.

## OPINION

SOLOMON, Senior District Judge:

Columbia Helicopters, Inc. (Columbia) seeks a tax refund of $324,570.41 in federal excise taxes paid on fuel used in its helicopters. The only issue is whether Columbia's helicopter operations from 1971 through 1976 were "noncommercial aviation" within the meaning of Section 4041(c) of the Internal Revenue Code, 26 U.S.C. § 4041(c).

Columbia owns and operates a fleet of helicopters. It uses its helicopters primarily to move timber, to erect towers for utilities and ski lifts and to hoist materials in other heavy construction projects. Columbia does not use or rely on the airports or airways of the federal aviation system.

Section 4041(c) imposes an excise tax on the use of all aircraft fuel in "noncommercial aviation". "Noncommercial aviation" is defined as any use of an aircraft for a purpose other than the business of providing air transportation for people or cargo.

Sections 4261 and 4271 impose excise taxes on the business of providing air transportation for people or cargo, but it is agreed that Columbia did not transport people or cargo, and Columbia was never required to pay the excise taxes in those provisions.

Columbia argues that even though its helicopter operations are within the language of Section 4041(c), the legislative history of that section reveals that Congress intended to impose an excise tax only on fuel used by those aircraft which made actual use of the airports and airways of the federal aviation system.

Columbia's operations are within the plain meaning of Section 4041(c). Even though reference may be made to the legislative history of the statute to discern the meaning Congress intended, *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 9–10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1975), here the legislative history of Section 4041(c) supports its plain meaning.

Congress enacted Section 4041(c) as part of the Airport and Airway Revenue Act of 1970, Title II, Pub.L.No. 91–258, 84 Stat. 236, in conjunction with the Airport and Airway Development Act of 1970, Title I, Pub.L.No. 91–258, 84 Stat. 219. The stated purpose of these enactments was to aid the expansion and development of the federal aviation system. Congress enacted the excise taxes in Sections 4041(c), 4261, and 4271 to make the users of the federal aviation system finance its development. The relevant portions of the House Report on H.R. 14465, which in substantially similar form became the Airport and Airway Revenue Act of 1970, reveal that Congress assumed that fuel use would have a substantial relation to use of the federal aviation system, and decided to impose in Section 4041(c) a fuel use excise tax on all aircraft which did not transport people or cargo for compensation. The House Report provides:

"Fuel Taxes

While the bulk of the user revenues from commercial carriers are to be derived from taxes on passengers and freight, most of the user revenues from general aviation (i. e., *noncommercial aviation, or any use of an aircraft other than in a business of 'transporting persons or property for compensation or hire by air')* will be obtained from taxes on fuel used in aviation—(1) an increased tax on gasoline and (2) a new tax on other aviation fuel. *The fuel tax on general aviation is a measure of its use of the airway system,* since general aviation (*as described above*) will not be subject to the passenger and cargo taxes. . . ." H.R. Rep.No. 91–601, 91st Cong.2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News p. 3084 (emphasis added).

The legislative history supports the conclusion that Congress chose the fuel excise tax in Section 4041(c) as the method of implementing a tax on the use of the federal aviation system.

In effect, Columbia asks this Court to redraft Section 4041(c) because there is not an exact correlation between use of the federal aviation system and the use of fuel in aircraft. This is a task for Congress. In 1976, Congress exempted from the fuel tax in Section 4041(c) certain museums which exhibit aircraft in part because their antique aircraft made no use of the federal aviation system. *See* 26 U.S.C. § 4041(h); S.Rep.No. 94–1321, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News pp. 5538, 5539. During the debate on the museum exemption, a member of Congress requested that aircraft used for agricultural purposes also be exempted from the tax because:

"[T]hey operate primarily off of unpaved dirt strips out in agricultural country and have little use for the air traffic control system, as well as for the upgraded airports." 117 Cong.Rec. H1853 (Aug. 2, 1976).

In answer, the Chairman of the House Ways and Means Committee said:

"[T]his involves virtually no revenue, just a very limited situation applying to certain nonprofit aircraft museums, which are presently exempt from Federal income tax.

"The question of an exemption for agricultural aircraft is a more widespread and complicated matter, and is more important from a revenue standpoint . . . ." *Id.*

The refusal by Congress to change the manner in which Section 4041(c) was administered when it amended that section is additional evidence that it was intended to apply to aircraft that make no use of the federal aviation system. *See Chemehuevi Tribe of Indians v. Federal Power Commission,* 420 U.S. 395, 410, 95 S.Ct. 1066, 43 L.Ed.2d 279 (1974).

The defendant is entitled to a judgment dismissing plaintiff's action. No costs.

This opinion shall constitute findings of fact and conclusions of law under Fed.R. Civ.P. 52(a).